# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 1923 | **DATE** | 1/25/2012 |
| **CASE TITLE** | Sneed vs. Fox, Eaves, Shaw & Patterson | | |

**DOCKET ENTRY TEXT**

Harvey Police Officer Andre Sneed has sued Harvey Police Chief Denard Eaves, former Dolton Police Chief Robert Fox, Dolton Inspector General Robert Shaw and Harvey Commander for Internal Affairs Marcus Patterson pursuant to 42 U.S.C. § 1983. Eaves and Patterson[1] move to dismiss Counts I and III, Fox moves to dismiss Count I, and Shaw moves to dismiss Count II pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). For the reasons herein, the Court denies Fox's and Eaves' motions [21, 28], strikes as moot Patterson's motion [28] and grants Shaw's motion [23] and dismisses plaintiff's claims against Shaw with prejudice. Shaw is hereby terminated as a defendant.

■ [ For further details see text below.]

Docketing to mail notices.

# STATEMENT

## Facts

Harvey Police Officer Sneed was involved in a job-related shooting and diagnosed with severe Post-Traumatic Stress Disorder and placed on "Injured On Duty" ("IOD") status. While on IOD leave, Sneed learned that Harvey Police Chief Eaves was consistently drinking large amounts of alcohol at the Dolton Bowl in Dolton, Illinois and then driving his vehicle while intoxicated. (Compl. ¶¶ 9, 25.) At around 6:15 p.m. on April 23, 2010, Sneed visited the Dolton Bowl to see if this information was true. (*Id.* ¶ 10.) Sneed saw and took video of Eaves consuming twelve beers between 6:30 p.m. and 10:00 p.m. before Eaves drove his personal vehicle from the bowling alley. (*Id.* ¶¶ 10-11.) Sneed followed Eaves and upon witnessing his erratic driving, called 911. (*Id.* ¶ 12.) A Cook County deputy sheriff stopped Eaves' vehicle. (*Id.* ¶ 13.) Eaves showed his police credentials and was released. (*Id.*)

Sneed placed a second call to 911. (*Id.* ¶ 14.) Soon thereafter, Dolton police officers found Eaves intoxicated and took him to the Dolton police station where he was to be charged and processed. (*Id.* ¶¶ 14-16.) The Dolton police officers asked Sneed to follow them to the station to file the complaint. (*Id.* ¶ 17.)

Then-Dolton Police Chief Fox, who was off duty at the time, drove to the police station and refused to let Eaves be charged. (*Id.* ¶¶ 18-20.) As Fox was escorting Eaves to the parking lot from the station, Fox, Eaves, and Sneed exchanged words that lead to obscenities. (*Id.* ¶¶ 21-24, 26-27.)

Fox then threatened to lock up Sneed. (*Id.* ¶ 28.) Eaves told Fox to arrest Sneed. (*Id.* ¶ 29.) Fox then told Sneed he was under arrest, accompanied him back to the station, ordered him to sit, and called an officer to bring handcuffs. (*Id.*) Sneed was not told why he was being placed under arrest. (*Id.* ¶ 31.) When Fox went into the rear of the station to find handcuffs, Sneed fled the station. (*Id.* ¶ 33.)

In the days following the incident, Sneed filed complaints against Fox and Eaves with their respective police departments. (*Id.* ¶ 35.) Dolton Inspector General Shaw failed to investigate Fox. (*Id.* ¶¶ 37, 40.)

## Discussion

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). In evaluating the motion, the court accepts as true all well-pleaded factual allegations in the complaint, and any inferences reasonably drawn from those facts are construed in the light most favorable to the plaintiff. *Roots P'ship v. Lands' End, Inc.*, 965 F.2d 1411, 1416 (7th Cir. 1992). A court should dismiss a complaint if it fails to provide the defendant with fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that "state a claim to relief that is plausible on its face" and raise the possibility of relief above the "speculative level." *Id.* at 545, 570. A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009).

A claim under section 1983 requires an allegation of a violation of a constitutional right by any person acting under the color of state law. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).

## I. False Arrest

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

First, Eaves moves to dismiss Count I because as Harvey Police Chief, he could not have acted under the color of state law when he told Fox to lock Sneed up because Eaves, as Police Chief of Harvey, had no authority over Fox as Police Chief of Dolton. "In order to be characterized as state action, 'the deprivation [of constitutional rights] must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible . . . [and] the party charged with the deprivation must be a person who may fairly be said to be a [S]tate actor.'" *Hallinan v. Fraternal Order of Police of Chi.*, 570 F.3d 811, 815 (7th Cir. 2009) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)). Private individuals will be considered state actors: (1) "when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights"; (2) "where the state compels the discriminatory action"; (3) "when the state controls a nominally private entity"; (4) "when a [municipality] is entwined with [the private actor's] management or control"; (5) "when the state delegates a public function to a private entity"; (6) "when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself." *Id.*

Sneed alleges that when Fox learned that Eaves had been arrested and was being transported to the Dolton police station, Fox immediately drove to the station and refused to let Eaves be charged. (Compl. ¶¶ 18-20.) Sneed alleges that after Eaves told Fox to lock Sneed up for Sneed's wanting to file a complaint against Eaves for driving while under the influence, Fox then told Sneed that he was under arrest and took Sneed back to the Dolton police station lobby and ordered him to sit, while calling another officer to bring handcuffs. (*Id.* ¶¶ 29-30.) Fox never told Sneed why he was under arrest. (*Id.* ¶ 31.) Based on these allegations, Sneed has sufficiently alleged that Eaves conspired or acted jointly with Fox in arresting Sneed without probable cause or any reasonably articulable suspicion of criminal activity.

Next, Fox and Eaves argue that Sneed's false arrest claim is facially implausible in that no reasonable person in Sneed's position would have thought that he had been arrested. "Generally, a person has been seized for Fourth Amendment purposes only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 926 (7th Cir. 2011) (quotation omitted).  The following factors are relevant with regard to the fact-based inquiry of whether a seizure has occurred:

> whether the encounter took place in a public place or whether police removed the person to another location; whether the police told the person he was not under arrest and was free to leave; whether the police informed the person that he was suspected of a crime or the target of an investigation; whether the person was deprived of identification or other documents without which he could not leave (such as a driver's license or train or airline ticket); and whether there was any limitation of the person's movement such as physical touching, display of a weapon, or other coercive conduct on the part of the police that indicates cooperation is required.

*United States v. Tyler*, 512 F.3d 405, 410 (7th Cir. 2008); *see United States v. McCarthur,* 6 F.3d 1270, 1275-76 (7th Cir. 1993).

Given the alleged facts of this scenario and the totality of the circumstances, Sneed has pleaded sufficient facts to show that a reasonable person in Sneed's position would not have believed that he was free to leave and that he was therefore under arrest.  The incident began in a public place, namely the parking lot of the Dolton police station, and then, after being told to "lock his ass up" by Eaves, Fox explicitly told Sneed he was under arrest and accompanied Sneed into the lobby of the Dolton police station.  (Compl. ¶¶ 21, 29.)  Fox threatened Sneed that "since you don't want to leave on your own, maybe if you got f—ed up and then locked up, you would understand that you're out of your jurisdiction." (*Id.* ¶¶ 28-29.)  Although Sneed was not deprived of identification or other documents without which he could not leave, Sneed's movement was limited when Fox physically escorted Sneed from the parking lot into the station. (*Id.* ¶ 61.)  Both Fox and Eaves engaged in threatening conduct toward Sneed and Fox physically touched Sneed, told him to sit and told another officer to bring handcuffs. (*Id.* ¶¶ 21-24, 26-29.)  Fox and Eaves' conduct was threatening and included explicit and obscene language.  (*Id.*)  That Sneed was eventually able to flee from the station lobby when Fox left to retrieve handcuffs to restrain Sneed does not mean that Sneed had not previously been seized based on the above alleged facts for purposes of the Fourth Amendment.  Given the alleged facts, and considering the factors that result in an arrest, Sneed has sufficiently pleaded that a reasonable person in his position would have felt he had been seized.

## II.  Failure to Investigate Claim

Shaw argues that Sneed fails to state a claim against him for failure to investigate the purportedly corrupt activities of Fox. The Court agrees.

Sneed has no constitutional right to have such complaints investigated.  *Slagel v. Shell Oil Refinery,* 811 F. Supp. 378, 382 (C.D. Ill. 1993) (holding that a police chief's failure to investigate plaintiff's complaint letter did not constitute a constitutional violation), *aff'd,* 23 F.3d 410 (7th Cir. 1994). "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

Because Sneed merely alleges that Shaw failed to investigate his complaint against Fox and that Shaw

| STATEMENT |
|---|

had a duty to do so simply because he was Inspector General of Dolton, Sneed fails to allege a constitutional violation of his rights. Therefore, the Court grants Shaw's motion to dismiss Count II and this claim is dismissed with prejudice.

1.Pursuant to a stipulation of dismissal, Patterson has been dismissed as a defendant and the Court thus strikes his motion to dismiss as moot.