# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 1923 | **DATE** | 9/13/2012 |
| **CASE TITLE** | *Sneed v. Fox, et al.* | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Eaves' motion for summary judgment [78-1] is granted and Fox's motion for summary judgment [74-1] is denied. Sneed and Fox shall appear for a status on September 21, 2012, at 9:30 a.m. in order to set a trial date

■[ For further details see text below.]   Docketing to mail notices.

# STATEMENT

Plaintiff Andre Sneed, a City of Harvey police officer, brought suit against Robert Fox, former Chief of Police of the Village of Dolton, and Denard Eaves, Chief of Police of the City of Harvey, alleging violations of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and state law. Of the four counts in his complaint, Sneed alleges two against Eaves and Fox: Count I for false arrest against Eaves and Fox and Count IV for common law battery against Fox. Both defendants move for summary judgment. For the reasons stated herein, Eaves's motion is granted and Fox's motion is denied.

## I.     Facts

On the evening of April 23, 2010, Eaves was participating in a bowling league at Dolton Bowl in the Village of Dolton. (Pl.'s Resp. Eaves' LR 56.1(a) Stmt., Dkt # 89, ¶ 21.) That same evening, Sneed, a Harvey police officer, went to Dolton Bowl to observe Eaves. (*Id*. ¶ 23.) Sneed testified that at Dolton Bowl, he saw Eaves drinking 10 to 12 cups of beer and photographed Eaves with his phone. (*Id*. ¶ 26; Eaves' Resp. Pl.'s Add'l Facts, Dkt. # 98, ¶ 4.) When Sneed saw Eaves about to drive after he had been drinking, Sneed called his co-worker, Officer Caridine, who told Sneed to call 911. (Pl.'s Resp. Eaves' LR 56.1(a) Stmt., Dkt # 89, ¶ 27.) After Sneed called 911, he followed Eaves, who went to a rib house in Riverdale, Illinois. (*Id*. ¶ 31.) Sergeant Lewis Lacey was on regular patrol on the evening of April 23, 2012, when he heard on the radio dispatch that an individual had left the bowling alley intoxicated. (*Id*. ¶ 32.) Lacey found the offending car at the rib house, entered and approached Eaves while he was ordering food. (*Id*. ¶ 34.) Lacey asked Eaves to step outside of the rib house with him. (*Id*. ¶ 35.) Officers Griffin and Caridine then arrived at the rib house. (*Id*. ¶ 37.) Lacey instructed Griffin to transport Eaves to the Dolton Police Station so that a DUI test could be administered. (*Id*. ¶ 39.)[1]

After Eaves was taken to the Dolton police station, Fox, the Chief of Police for the Village of Dolton at the time of the events at issue, was called and told that Eaves was at the station. (Eaves' Resp. Pl.'s Add'l

Facts, Dkt. # 98, ¶ 14.) Eaves testified that when Fox entered the Dolton police station, he said, "Eaves, get your shit, let's get out of here. This is a bunch of bullshit." (*Id*. ¶ 20.) Fox and Eaves exited the Dolton police station through the front door. (*Id*. ¶ 21.)

Sneed was at the front door when Fox and Eaves left the station. (Pl.'s Resp. Eaves' LR 56.1(a) Stmt., Dkt. # 89, ¶ 48.) Sneed testified that he stepped in front of Fox and told him that he was there to file a complaint against Eaves. (*Id*. ¶ 49.) Sneed further testified that Fox said that no crime had been committed and he was not taking any complaints. (*Id*. ¶ 50.) According to Sneed, Eaves started shouting obscenities and stated that he was going to fire Sneed, that Sneed was a psycho and he was not going to let Sneed return to work. (*Id*. ¶ 51.) Sneed testified further that at some point as Fox and Eaves were leaving the police station, he heard Eaves tell Fox to "lock his ass up." (*Id*. ¶ 53.) Sneed testified that Fox, in an attempt to calm the situation, told Eaves to go and sit in Fox's squad car. (*Id*. ¶ 52.) Sneed testified that after Eaves was in Fox's car, Fox told Sneed that he was "out of his jurisdiction" and that he would get "fucked up" and "locked up" in Dolton. (*Id*. ¶ 55.) According to Sneed, once Fox realized Sneed was not leaving, Fox told him, "[W]ell, now you're not going to leave. Now you're under arrest, come back in the station." (*Id*. ¶ 56.) On the way into the police station, Sneed testified that he believed that Fox touched him and that the touch was "concerning" to him. (*Id*. ¶ 60.) Sneed testified that he walked into the lobby of the police station and sat down but ran out to the parking lot once Fox went to the back of the station house. (*Id*. ¶ 59.) Sneed was never fingerprinted or photographed. (*Id*. ¶ 69.)

Fox denies having any interaction with Sneed when he left the police station with Eaves. (Eaves' Resp. Pl.'s Add'l Facts, Dkt. # 98, ¶ 24.) Fox claims he never asked Eaves to go sit in the squad car and does not recall re-entering the station after walking out with Eaves. (*Id*. ¶¶ 25, 27.)

II. **Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). At the summary judgment stage, we "do not evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). Normally, all evidence and reasonable inferences are construed in favor of the non-moving party to determine if there is a genuine issue of material fact. *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005).

III. **Analysis**

A. <u>Eaves</u>

Sneed alleges that Eaves falsely arrested him in violation of the Fourth Amendment. In order to impose § 1983 liability on an individual, a plaintiff must establish the defendant's personal responsibility for the claimed conduct. *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987) ("Each individual defendant can only be liable for what he or she did personally, not for any recklessness on the part of any other defendants, singly or as a group.").

Eaves contends that he cannot be held liable for false arrest because he played no part in Sneed's arrest. Specifically, Eaves points to Sneed's deposition testimony that Fox told Eaves to sit in his squad car before Fox made any mention of locking up Sneed. (Pl.'s Resp. Eaves' LR 56.1(a) Stmt., Dkt. #89, ¶ 55.) Thus, Eaves asserts, he could not have had any personal involvement in Sneed's arrest because he was sitting

| STATEMENT |
|---|

in the back of the squad car when Sneed was taken into the station. Sneed responds that Eaves told Fox to "lock his ass up" before he went to the squad car (*Id*. ¶ 53), and therefore is liable under § 1983 for the resulting arrest. But, Sneed himself testified that the arrest was not made in response to Eaves' statement, directive or request that he be locked up. Rather, it was only after Eaves got into Fox's squad car at Fox's request, and it was clear that Sneed was not leaving that Fox said to Sneed, "[O]kay, well, now you're not going to leave. Now you're under arrest, come back in the station." (Sneed Dep. 109.) Thus, Sneed's own testimony supports the conclusion that Fox arrested Sneed not because of any request or complaint by Eaves, but because Sneed did not leave the police station. Thus, Sneed did not cause Fox to be falsely arrested.

Sneed contends that Eaves is liable because "the arrest was clearly made at his direction." (Pl.'s Resp. Eaves' Mot. Summ. J., Dkt. # 86, at 6.) A supervisor may be held liable under § 1983. To be held liable, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988)). But Sneed comes forward with no evidence that Eaves was Fox's supervisor or had the power or authority to direct Fox to do anything or to prevent Fox from making an arrest. Quite the contrary appears to be the case.

Sneed has not pointed to record evidence that Eaves was directly involved or participated in Sneed's purported arrest or that he could be liable as Fox's supervisor for condoning or facilitating the alleged false arrest. Accordingly, Eaves' motion for summary judgment is granted.

  B.  <u>Fox</u>

    1.  *Battery*

"[A] common-law battery is the unauthorized touching of the person of another." *In re Estate of Allen*, 848 N.E.2d 202, 210 (Ill. App. Ct. 2006). Fox asserts that he cannot be held liable for battery because he contends that he did not touch Sneed and Sneed testified that any physical contact Fox had with him on the evening at issue "was slight." (Pl.'s Stmt. Add'l Facts, Dkt. # 90, ¶ 9.) Sneed responds that he testified that Fox touched him and that the touch was "concerning" to him. (*Id.*) Accordingly, a genuine issue of material fact exists as to whether Fox touched Sneed. Despite acknowledging this dispute of material fact, Fox asserts that the Court should not only enter summary judgment in his favor but also sanction Sneed for bringing a "clearly frivolous claim." (Fox's Memo. Supp. Summ. J., Dkt. # 75, at 7.) While the evidence of battery may not be overwhelming, it is not wholly absent; thus, Fox's motion for summary judgment is denied.

The Court is not persuaded differently by Fox's assertion that battery requires an intent to cause harmful or offensive contact. Recently, in *Bakes v. St. Alexius Medical Center*, 955 N.E.2d 78 (Ill. App. Ct. 2011), the Illinois Appellate Court noted that it was "lamentable" that no Illinois Pattern Jury Instruction exists as to the common law tort of battery, and that "there exists a dichotomy within the intent requirement for the tort of battery, *i.e.*, whether intent equates to an intent to harm or offend, or merely an intent to touch." *Id*. at 84-85. In addressing the plaintiff's challenge to the jury instruction given at trial, *id*. at 85, the *Bakes* court noted that case support existed for both arguments regarding intent and that "coming to a one-size-fits-all definition of civil battery is not only difficult, it may well be a fool's errand. . . ." *Id*. at 87. Thus, while concluding that the jury instruction given in that case, which required an intent to harm or offend, was proper, the *Bakes* court neglected to articulate what type of intent is required in a claim for common law battery. Even assuming that an intent to harm or offend is an element of battery, the Court could not state as a matter of law that, under the facts as presented by the parties at this time, no intent to offend existed.

| STATEMENT |
|---|

   2.   *False Arrest*

Fox next asserts that summary judgment should be granted in his favor on Sneed's false arrest claim because no reasonable jury could find that Sneed had been seized. "Generally, a person has been seized for Fourth Amendment purposes only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 926 (7th Cir. 2011) (quotation omitted). The following factors are relevant with regard to the fact-based inquiry of whether a seizure has occurred:
> whether the encounter took place in a public place or whether police removed the person to another location; whether the police told the person he was not under arrest and was free to leave; whether the police informed the person that he was suspected of a crime or the target of an investigation; whether the person was deprived of identification or other documents without which he could not leave (such as a driver's license or train or airline ticket); and whether there was any limitation of the person's movement such as physical touching, display of a weapon, or other coercive conduct on the part of the police that indicates cooperation is required.

*United States v. Tyler*, 512 F.3d 405, 410 (7th Cir. 2008).

Here, Sneed testified at his deposition that as he was standing outside the Dolton police station, Fox used explicit language with Sneed, telling him that he was "out of his jurisdiction" and would get "fucked up" and "locked up," (Pl.'s Stmt. Add'l Facts, Dkt. # 90, ¶ 26), Fox then told him, "[N]ow you're under arrest, come back in the station," (Pl.'s Resp. Fox's LR 56.1(a) Stmt., Dkt. # 89, ¶ 56), Fox touched Sneed in a "concerning" manner as they entered the police station (*Id.* ¶ 60), and Fox told Sneed to have a seat inside the station (Pl.'s Stmt. Add'l Facts, Dkt. # 90, ¶ 34.) Again, while not overwhelming evidence of a seizure, the Court cannot conclude that no reasonable jury could find that there had been a seizure. Accordingly, Fox's motion for summary judgment on the false arrest claim is denied.

**IV.   Conclusion**

For the reasons stated above, Eaves' motion for summary judgment [78-1] is granted and Fox's motion for summary judgment [74-1] is denied. Sneed and Fox shall appear for a status on September 21, 2012, at 9:30 a.m. in order to set a trial date.

---

1. Sneed asserts Eaves was arrested at that time, but the fact is not material to the Court's determination of the claim against Eaves.